## CIRCUIT COURT OF LOUDOUN COUNTY

Washington Gas Light Co.

v.

Leo Construction Co.

February 26, 1999

Case No. (Law) 20715

BY JUDGE JEAN HARRISON CLEMENTS

This case came before the Court on February 18 and 19, 1999, for trial without a jury upon Plaintiff Washington Gas Light Company's Amended Motion for Judgment against Leo Construction Company, Defendant, and its Answer and Grounds of Defense thereto. Evidence was presented; the case was argued by counsel, and taken under advisement by the Court.

Plaintiff is a corporation organized under the laws of Virginia and is a natural gas distribution company which provides public utility service in northern Virginia, including Loudoun County. Its gas distribution system includes underground utility lines. Defendant, a corporation organized under the laws of the Commonwealth of Virginia, engages in excavation which includes excavation around underground utility lines.

Plaintiff alleged Defendant was negligent and caused damage to its lines in twelve separate counts and seeks recovery for actual/compensatory damages with pre-judgment and post-judgment interest and costs. Plaintiff further seeks triple damages plus pre-judgment and post-judgment interest and costs. The dates and places of damage are as follows:

| Count I | Lot 14, Peregrine Court Montclair, Virginia | November 19, 1996 |

| | | |
|---|---|---|
| Count II | Lot 21, Rhode Island Avenue<br>Dale City, Virginia | November 23, 1996 |
| Count III | 4741 Thornbury Drive<br>Fairfax County, Virginia | January 22, 1997 |
| Count IV | 406 North Street<br>Leesburg, Virginia | February 17, 1997 |
| Count V | Lot 52, Foal Court<br>Gainesville, Virginia | April 4, 1997 |
| Count VI | Lot 62, Hyde Park Drive<br>Sterling, Virginia | April 30, 1997 |
| Count VII | Lot 3, Estate Place<br>Ashburn, Virginia | May 22, 1997 |
| Count VIII | Lots 223 and 229, Michael Court<br>Manassas, Virginia | July 16, 1997 |
| Count IX | Lot 56, Medix Run Place<br>Ashburn, Virginia | August 6, 1997 |
| Count X | Lot 193, Covent Garden Way<br>Ashburn, Virginia | August 11, 1997 |
| Count XI | Lot 821, Crowning Place<br>Gainesville, Virginia | September 19, 1997 |
| Count XII | 11334 Kessler Place<br>Manassas, Virginia | October 9, 1997 |

In its Answer and Grounds of Defense and in its opening statement, counsel for Defendant admitted negligence and liability to the allegations in Counts 3, 6, 7, 9, 10, and 11. Negligence and liability is denied as to Counts 1, 2, 4, 5, 8, and 12. Although Defendant acknowledges that its actions in fact damaged Plaintiff's utility lines as alleged, compensatory damages as to all Counts, except in Count 11, are in dispute. In its closing argument, defendant,

by counsel, agreed to Plaintiff's compensatory damages in the amount of $974.73, for Count 11. Defendant denies any liability for triple damages sought by Plaintiff pursuant to § 56-5, Code of Virginia.

The Court will address the evidence of Counts 1, 2, 4, 5, 8, and 12 first. This case involves several sections of the Underground Utility Damage Prevention Act, specifically § 56-265.17, § 56-265.18, § 56-265.19, § 56-265.24, and § 56-265.25. On the issue of triple damages, § 56-5 is applicable.

Defendant, as an excavator, was required to notify "Miss Utility" (the notification center) before beginning excavation. The requirements of a Notice are designated in § 56-265.18. Plaintiff, as operator, was then assigned duties pursuant to § 56-265.19. In each instance of this case, those duties were carried out by Byers Locate Service. If there was an underground line that could be damaged, then Byers was to "mark" the line on the ground to within two feet of either side by stakes, by high visibility safety yellow paint (for gas), or by flags no later than 48 hours after receiving Defendant's Notice through "Miss Utility." Byers then had to report to "Miss Utility" no later than 48 hours that the location had been marked or that there were no utility lines within such proximity of the excavation or demolition that may be damaged by the excavator.

Defendant was required to wait at least 48 hours after Notice before commencing work. If "Miss Utility" failed to respond to Defendant within 48 hours, then Defendant was required to wait an additional 24 hours before commencing work.

Defendant's notification to "Miss Utility," called a "Ticket," was valid for fifteen working days from the date Defendant gave Notice, and two days before the end of the period, or at any time the "marks" became illegible, Defendant was to call "Miss Utility" and request a "remark."

If the Defendant was excavating within two feet of either side of a staked or marked line, it was required to take all reasonable steps necessary to properly protect, support, and backfill the lines, including but not limited to "hand digging." Upon arrival at the site, and, if the Defendant observed clear evidence of the presence of an unmarked line in the area of the proposed excavation, it was not to begin until three hours after an additional call to "Miss Utility." Defendant was required at all times to exercise due care to protect Plaintiff's underground lines.

In the event of damage to an underground line, Defendant was required to immediately notify Plaintiff. Plaintiff was to repair the damage. Defendant, however, was responsible to take immediate steps reasonably calculated to safeguard life, health, and property if the damages created an emergency.

Count I. Defendant notified "Miss Utility" on November 13, 1996, of intent to excavate, and Byers accurately marked the lines on November 14, 1996. Defendant cut the stub off of a "dry cross" below ground when it trenched behind the location of the marker. The "Ticket" clearly showed lines marked and stubs. Defendant's operator testified he saw no marks. Defendant was negligent in failing to observe the marks or call for three hours' Notice or "remark" in view of the information on the "Ticket."

Count II. On November 13, 1996, Defendant notified "Miss Utility" of intent to excavate, and Byers was given the Notice. However, on November 14, 1996, Defendant's employee "Kevin" "waived Byers off," and no locate was done. Eight feet from the lot was a visible gas line stake. Defendant was excavating on a site without a valid "Ticket." Defendant "hung a crossing" with a backhoe. Defendant "crimped" over the broken line with electrical tape. Defendant was negligent in excavating without a valid "Ticket," in failing to call for "marks," and failing to observe clear evidence of the presence of an unmarked gas line. Although Plaintiff testified that "crimping" a gas line emitting escaping gas was illegal and dangerous, the Court has no evidence as to the other circumstances at the time of the break. The Court construes Plaintiff's evidence to be a situation in which Defendant could perceive an emergency but cannot conclude that the steps taken were unreasonable when Defendant took them.

Count IV. On February 7, 1997, Defendant notified "Miss Utility" of intent to excavate, and Byers accurately marked the lines on February 10, 1997. Defendant's Supervisor testified there were no marks on site on February 17, 1997. A 3/4 inch gas service line was cut. There was considerable evidence and argument over gas lines and service to other lots in the area and a riser/meter that was or should have been visible on the side of an adjacent house. The Court finds that the Defendant was negligent in failing to observe the marks or, if they were obliterated after marking, in failing to call for three hours' Notice or "re-mark" in view of the information on the "Ticket."

Count V. On March 19, 1997, Defendant notified "Miss Utility" of intent to excavate, and Byers was given the Notice. Defendant indicated the type of work to be the installation of electric mainline. However, on March 20, 1997, Defendant's employee "Kevin" called and said the mainline was in and would call if marks were needed for service. Defendant's Exhibit 5 indicates a "Ticket" with a start date of April 7, 1997. A line was damaged April 4, 1997, by Defendant's machinery. Defendant was negligent in excavating without a valid Notice/Ticket.

Count VIII. On July 8, 1997, Defendant notified "Miss Utility" of intent to excavate, and Byers was given the Notice. Although Byers did not respond within 48 hours, on July 11, 1997, Defendant's employee "Mike" "waived Byers off" that no marks were needed. Defendant cut a dry crossing with a backhoe. A "dead end" marker was used by Defendant to locate lines. Plaintiff's witnesses testified these are not proper "marks" and only serve to aid its employees in knowing where a line ends. Defendant was negligent in excavating without a valid Notice/Ticket and in failing to observe clear evidence of the presence of an unmarked gas line.

Count XII. On October 2, 1997, Defendant notified "Miss Utility" of intent to excavate, and Byers accurately marked the lines on October 3, 1997. Plaintiff's and Defendant's evidence is in dispute as to whether marks were still visible on the 3/4 inch feeder line which was cut. Defendant was negligent in failing to observe the marks or, if they were obliterated after marking, in failing to call for three hours' Notice or "re-mark" in view of the information on the "Ticket."

In all Counts except XII, Defendant assessed damages by "Flat Rate Bill" of $506.59. Mr. John Winchell, staff accountant of Plaintiff, testified as to the company's policy and basis for arriving at this charge. No questions were asked of the witness in cross-examination, and no evidence in derogation thereof was presented by the Defendant. Although counsel for Defendant argued against this method of assessing damages, the evidence is sufficient that the Plaintiff assessed the total cost to repair as it is normally computed. Defendant is therefore liable to Plaintiff in the sum of $6,548.32. Judgment shall be entered accordingly together with pre-judgment and post-judgment interest and costs.

The final issue is whether the Plaintiff may recover triple damages pursuant to § 56-5. For this issue, the Court considers its findings of facts in Counts 1, 2, 4, 5, 8, and 12. In addition, the Court considers the Defendant's negligence, as admitted, in Counts 3, 6, 7, 9, 10, and 11, which included digging where lines were partly exposed, digging where lines previously marked were obliterated, moving rock with machinery, failing to have a valid "Ticket," failing to hand dig, improperly using stub markers, and making illegal and dangerous "crimping" repairs to "blowing" gas lines.

Defendant's liability, if any, depends upon whether Plaintiff has proven that any or all of the acts of the Defendant were "willful." Although Chapter 1 of Title 56 does not define "willful," § 56-265.15 of Chapter 10.3 does. " 'Willful' means an act done intentionally, knowingly, and purposely, without justifiable excuse, as distinguished from an act done carelessly, thoughtlessly,

heedlessly, or inadvertently." It should also be noted that there is a punitive damage provision in § 56-265.17 for willful acts but that Plaintiff is not seeking such relief.

In addition, Defendant's witness, Cheryl Lee, testified as to Defendant's standard procedures for compliance with statutory obligations as they pertain to giving Notice and acting pursuant to statutory guidelines in the field. She further testified to the multiple excavations, over a thousand a year for other area power, telephone, television, and cable television utilities and as to the financial losses of "down time," repairs, investigations, and damages to Defendant when breaks occur.

Weighing and considering all of this evidence, the Court concludes that the Plaintiff has failed to carry its burden of proof of willfulness, and its claim for triple damages is denied.